**UNITED STATES COURT OF INTERNATIONAL TRADE**

HUAXING CABLE USA LLC,

*Plaintiff*,

v.

UNITED STATES OF AMERICA;
U.S. CUSTOMS & BORDER PROTECTION;
RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION,

*Defendants*.

Court No. 26-cv-05040

**COMPLAINT**

Plaintiff Huaxing Cable USA LLC ("Plaintiff" or "Huaxing"), by its undersigned attorneys, alleges the following:

1. Plaintiff is a U.S.-based importer of merchandise subject to the challenged duties discussed below.

2. Beginning in February 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources imports.

3. Plaintiff is the importer of record of merchandise subject to the IEEPA Duties and paid the IEEPA Duties on its imported goods.

4. This Court and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") have held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.), *cert. granted*, No. 25–250, 2025 WL 2601020 (U.S. Sept. 9, 2025) ("*V.O.S. Selections*").

5. Through this action, Plaintiff asks the Court to hold that, with respect to goods imported by Plaintiff, the IEEPA Duties imposed and collected by Defendants, and the underlying executive orders that directed them, are unlawful.

6. The U.S. Supreme Court heard oral argument in *V.O.S. Selections*, and a companion case arising out of the U.S. District Court for the District of Columbia, on November 5, 2025.[1]

7. On February 20, 2026, the U.S. Supreme Court issued a 6-3 majority opinion striking down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump,* No. 24-1287, slip op. at 20 (U.S. Feb 20, 2026).

8. The Supreme Court confirmed that such challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the U.S. Court of International Trade. *Id.* at 5.

9. This separate action is now necessary because the import entries for which Plaintiff paid IEEPA Duties will generally become liquidated and U.S. importers such as Plaintiff that have paid IEEPA Duties are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment from this Court.

---

[1] *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24–1287, 2025 WL 2601021 (U.S. Sept. 9, 2025) ("*Learning Resources*").

10. This action is also necessary at this time because it is uncertain whether Defendants will issue refunds on certain liquidated entries even after the Supreme Court's affirmation of *V.O.S. Selections*. Plaintiff seeks relief from the impending liquidations to ensure that their rights to a complete refund are not jeopardized.

11. Now, for itself, Plaintiff seeks (i) a declaration that the IEEPA Duties are unlawful; (ii) a full refund, with interest as required by law, from Defendants of all IEEPA Duties that Plaintiff has paid to the United States, as well as those they will continue to pay, for both unliquidated and liquidated import entries, and (iii) an injunction preventing Defendants from further liquidating Plaintiff's import entries subject to the IEEPA Duties.

## PARTIES

12. Plaintiff Huaxing is a limited liability company established under the laws of the State of California with a principal place of business in Irvine, California.

13. Plaintiff imports various goods on which IEEPA Duties are and were paid.

14. Defendant U.S. Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible generally for border security and collecting tariffs, duties, and taxes on goods imported into the United States.

15. Defendant United States received the disputed IEEPA Duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

16. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

17. Defendants are referred to collectively in this Complaint as the "Defendants."

## JURISDICTION

18. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See V.O.S. Selections*, 149 F.4th at 1334. The Court has the same powers at law and in equity as a U.S. District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

19. Plaintiff has standing to sue because it is "adversely affected or aggrieved" by agency action within the meaning of the Administrative Procedure Act. 5 U.S.C. § 702; 28 U.S.C. § 2631(i). IEEPA Duties imposed by Defendants adversely affected and aggrieved Plaintiff because, as importer of record, it was required to pay and did pay these unlawful IEEPA Duties.

20. Declaratory and injunctive relief from this Court would redress those injuries. Plaintiff also faces imminent and irreparable harm due to uncertainty as to whether Defendants will issue refunds of the IEEPA Duties as to liquidated entries.

21. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). On February 1, 2025, President Trump issued the first Executive Orders under IEEPA that resulted in the collection of IEEPA Duties. Subsequently, President Trump issued various Executive Orders establishing new or revised IEEPA Duties. These Executive

Orders were published in the Federal Registrar shortly thereafter. The instant action is timely filed within two years of the date that these Orders were issued and published, and within two years in which Plaintiff first paid IEEPA Duties.

**GENERAL PLEADINGS**

**I. IEEPA Tariff Orders**

22. On February 1, 2025, President Trump issued three Executive Orders imposing tariffs on imports from Canada, Mexico, and China.[2] Each Executive Order was premised on IEEPA authorizing the tariffs. Collectively, these IEEPA Duties are referred to in this Complaint as the "Trafficking Tariffs." Pursuant to these orders, CBP assessed additional IEEPA Duties upon Plaintiff's entries.

23. President Trump subsequently modified the Trafficking Tariffs on Chinese-origin merchandise and changed the scope of goods subject to Trafficking Tariffs on Canadian- and Mexican-origin merchandise.[3]

24. On April 2, 2025, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*

---

[2] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[3] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

("Reciprocal Tariff Order").[4] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports in the United Sates, effective April 5, 2025, and then higher "reciprocal" tariffs on 57 countries, effective April 9. These higher country-specific tariffs ranged from 11% to 50%.

25. President Trump subsequently modified the Reciprocal Tariff Order.[5]

26. In implementing the IEEPA Duties, Defendants directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the IEEPA Duties be entered under new tariff codes.

27. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, No. 25-cv-00066 (Dkt. 2). As discussed below, the Court held that the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

28. After the *V.O.S. Selections* complaint was filed, President Trump (invoking IEEPA) issued additional executive orders imposing additional IEEPA Duties and modifying other tariff rates as to specific countries. As explained below, IEEPA does not authorize the President to impose tariffs. By this Complaint, Plaintiff challenge the

[4] Exec. Order No. 14257, *Regulating Imports with a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[5] *See, e.g.*, Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025), 90 Fed. Reg. 15,625 (Apr. 15, 2025).

IEEPA Executive Orders (the "IEEPA Tariff Orders") that affect the duty rates on goods imported by Plaintiff and for which Plaintiff has paid unlawful IEEPA Duties.

## II. CBP's Implementation of IEEPA Tariff Orders

29. CBP is charged with the collection and assessment of duties. 19 U.S.C. §§ 1500, 1502.

30. When goods enter the United States, CBP collects and assesses applicable tariffs, including the IEEPA Duties, on the imported goods based upon the tariff classification of the goods, and according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

31. Once the final amount of duty is determined by CBP, CBP "liquidates" the import entry and notifies the importer of record as to whether the importer owes more money or is entitled to a refund. 19 U.S.C. § 1500.

32. Once liquidation has occurred, and if the liquidation is protestable, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and certain other CBP decisions encompassed therein. 19 U.S.C. § 1514(a).

33. This Court and the Federal Circuit have cautioned that in certain circumstances an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365–66 (Ct. Int'l Trade 2021); *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

34. This Court possesses the equitable authority to suspend liquidation. *See, e.g., In re Section 301 Cases*, 524 F. Supp. 3d at 1365–66.

## III. IEEPA Does Not Authorize Tariffs

35. The IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., Section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

36. None of these statutes authorize the President to impose tariffs. Of these statutory authorities, Defendants have relied solely on the IEEPA statute to impose and collect the IEEPA Duties.

37. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the Plaintiff in *V.O.S. Selections,* holding that IEEPA did not authorize assessment of IEEPA Duties, and otherwise holding that the IEEPA Tariff Orders were unlawful.

38. The Federal Circuit stayed this Court's decision and this Court's injunction and ordered an expedited briefing schedule and hearing.

39. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections*.

40. In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Resources.* That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources.*

41. These cases were consolidated, with argument before the Supreme Court on November 5, 2025.

42. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that the "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

**IV. Plaintiff Paid IEEPA Duties**

43. Plaintiff imports merchandise that were subject to IEEPA Duties and entered the merchandise under new HTSUS codes established to implement the IEEPA Duties.

44. As of the date of this Complaint, Plaintiff has paid IEEPA Duties imposed by the IEEPA Tariff Orders.

45. Plaintiff paid IEEPA Duties on a regular basis through February 2026.

46. Based on Plaintiff's belief, CBP has advised importers that it will not extend liquidation for entries subject to IEEPA Duties due to pending litigation.

## STATEMENT OF CLAIMS

### COUNT I
### THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS*

47. Plaintiff incorporates paragraphs 1–46 above by reference.

48. The Court of International Trade in *V.O.S. Selections* held that the President exceeded his authority under the IEEPA when he imposed tariffs on imported goods.

49. The *V.O.S. Selections* Court held that: (i) IEEPA authorizes the President only to "investigate, regulate, or prohibit" importation; (ii) IEEPA does not authorize

the imposition of IEEPA Duties; and (iii) neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

50. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose IEEPA Duties. The Federal Circuit further stated that construing IEEPA to permit such authority would raise substantial constitutional concerns, including concerns under the major questions and non-delegation doctrines.

51. The U.S. Supreme Court subsequently affirmed the decision of the Federal Circuit in *Learning Resources*, slip op. at 20.

52. The IEEPA Tariff Orders challenged in this Complaint are materially identical in structure, authority claimed, and effect to those struck down in *V.O.S. Selections*. They purport to impose duties and to modify the HTSUS solely under IEEPA. For the same reasons set forth in *V.O.S. Selections* and *Learning Resources*, slip op. at 20, the IEEPA Tariff Orders exceed the President's authority under IEEPA and are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

53. Plaintiff respectfully requests that this Court apply the binding decisions of the Federal Circuit and the U.S. Supreme Court, declare the IEEPA Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, including but not limited through liquidation of entries subject to the IEEPA Duties, and order refund of all IEEPA Duties collected from Plaintiff, with interest as provided by law, without regard to the liquidation status of any entries.

54. To the extent that Plaintiff's entries liquidate during the pendency of this action, the Court should exercise its authority under 28 U.S.C § 1581(i) to order reliquidation of all such entries so that Plaintiff may receive refunds of all IEEPA Duties without regard to the liquidation status of any entry.

## COUNT II
## THE CHALLENGED ORDERS ARE UNCONSTITUTIONAL

55. Plaintiff incorporates paragraphs 1–54 above by reference.

56. In addition, the IEEPA Tariff Orders must be held unlawful because Defendants' interpretation of IEEPA converts the statute into an impermissible delegation of legislative power.

57. The U.S. District Court in *Learning Resources* held that interpreting IEEPA to permit the President to impose broad import tariffs would violate Article I, § 1 and § 8 of the U.S. Constitution, which vest in Congress the power to "lay and collect . . . Duties."

58. That court further reasoned that under the separation-of-powers principles and binding precedent of the U.S. Supreme Court, Congress cannot delegate its power to the President unless it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that power.

59. Accordingly, under Defendants' construction of IEEPA to permit the Tariff Orders, that delegation would lack an intelligible principle and would therefore be unconstitutional. On that basis, the IEEPA Tariff Orders are unlawful.

60. Plaintiff therefore seeks a declaration that the IEEPA Tariff Orders are unlawful under the reasoning of *Learning Resources* as to Plaintiff, enjoining Defendants from enforcing them as to Plaintiff, and ordering refunds of all IEEPA duties collected from Plaintiff, with interest as provided by law.

**COUNT III**
**DECLARATORY RELIEF, 28 U.S.C. § 2201**

61. Plaintiff incorporates paragraphs 1–60 above by reference.

62. Federal courts have the power "to declare the rights and other legal relations of any interested party seeks such a declaration." 28 U.S.C. § 2201(a).

63. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of Defendants to implement and collect the resulting tariffs.

64. Plaintiff is the importer of record and has suffered and is suffering injury by paying IEEPA Duties as a result of the IEEPA Tariff Orders on goods they have imported into the United States.

65. This Court should exercise its equitable power to enter a declaratory judgment that the IEEPA Tariff Orders are unlawful for any or all the above reasons, and that Defendants lack authority to implement and collect the resulting tariffs, as to Plaintiff.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

1. Declare that the President lacks authority under the IEEPA to impose import tariffs;

2. Declare that the IEEPA Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;
3. Declare that, with respect to Plaintiff, Defendants lack authority to implement and collect any tariffs set out in the HTSUS that are based on the IEEPA Tariff Orders;
4. With respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the IEEPA Tariff Orders, including but not limited to an injunction against liquidation of entries as subject to the IEEPA Duties;
5. Order CBP to liquidate Plaintiff's unliquidated entries as not subject to the IEEPA Duties, and to reliquidate Plaintiff's liquidated entries as not subject to the IEEPA Duties, without regard to the finality rule and any protests under 19 U.S.C. § 1514;
6. Order the United States to refund to Plaintiff the IEEPA Duties collected on all entries, with interest as provided by law;
7. Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action as authorized under 28 U.S.C. § 2412 and any other applicable law; and
8. Grant such further relief as this Court deems proper.

Dated: November 5, 2026

DORSEY & WHITNEY LLP

By /s/ Tzu-Huan Augustine Lo
T. Augustine Lo
lo.augustine@dorsey.com
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
Telephone: (206) 903-8721

***Counsel for Plaintiff***
***Huaxing Cable USA LLC***